UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DULJIA BIBERAJ,

               Plaintiff,

     - against -

PRITCHARD INDUSTRIES, INC., LOCAL
32BJ, SERVICE EMPLOYEES
INTERNATIONAL UNION, GREGORY
MORABITO, TOM CALDERONE, RAMIZ
GJOMBALAJ, TONY AGOLLI, FRANK
BOLMAN, OSCAR PINEDA & MILLIOT
"DOE" as a fictitious name of a real
individual whose true identity is unknown at
the present time,

               Defendants.

08 Civ. 07993 (PGG)

**MEMORANDUM
<u>OPINION & ORDER</u>**

PAUL G. GARDEPHE, U.S.D.J.:

       <u>Pro se</u> Plaintiff Duljia Biberaj was formerly employed by Pritchard Industries,

Inc. ("Pritchard") as an office cleaner, and is a former member of Local 32BJ of the Service

Employees International Union ("Local 32BJ" or "Union").  Biberaj filed this action on

September 15, 2008, alleging violations of the Labor Management Relations Act, the Fair Labor

Standards Act ("FLSA"), and the New York Labor Law ("NYLL"), and infliction of emotional

distress.  (<u>See</u> Cmplt.)

       On November 12, 2008, Local 32BJ, Frank Booth, and Oscar Pineda (collectively

"Union Defendants"), and Pritchard, Gregory Morabito, Tom Calderone, Ramiz Gjombalaj, and

Maliot Balidenaj[1] (collectively "Pritchard Defendants") moved to dismiss the Complaint for

---

[1]  Plaintiff and the Pritchard Defendants have stipulated that the "Milliot Doe" referred to in the
Complaint is Maliot Balidenaj.  (Stipulation and Order dated October 14, 2008, Dkt. No. 2).
Moreover, in its September 28, 2009 Order, this Court determined that (1) the individual
identified as "Frank Bolman" in the Complaint is in fact Local 32BJ representative Frank Booth,

failure to state a claim under Fed. R. Civ. P. 12(b)(6).  On September 28, 2009, this Court issued an order granting in part and denying in part Defendants' motions to dismiss.  (Dkt. No. 23)

The Court dismissed the Complaint's first and second causes of action – for breach of the collective bargaining agreement and breach of the duty of fair representation – to the extent that they relied on time-barred conduct set forth in Paragraphs 46-48, 50-52, 62-64, and 73 of the Complaint.  This Court also dismissed the Complaint's third and fourth causes of action – for alleged violations of the FLSA and the NYLL – as to the Union Defendants because Local 32BJ and its agents were not Plaintiff's employer.  These claims were likewise dismissed as to the Pritchard Defendants to the extent that they were based on alleged record-keeping violations and an alleged failure to provide meal time and breaks.

This Court further dismissed the fifth and sixth causes of action – alleging retaliation in violation of the FLSA and NYLL – because of Plaintiff's failure to allege that she had engaged in "protected activity" or that she had been retaliated against because of her participation in "protected activity."  Plaintiff's seventh cause of action, which asserted a claim for respondeat superior, was dismissed because respondeat superior is not a stand-alone cause of action.  The eighth cause of action – for negligent infliction of emotional distress – was dismissed because Plaintiff failed to allege that Defendants owed her a special duty.  Finally, the ninth cause of action – for intentional infliction of emotional distress – was dismissed as to the Union Defendants because Plaintiff's allegations as to them did not meet the "extreme outrage" standard set by New York courts.[2]  (Dkt. No. 23 at 31)

---

and (2) Defendant Tony Agolli had not been served with the Summons and Complaint and has not appeared in this action.  (Dkt. No. 23 at 1 n.1)

[2] Union Defendants "Frank Bolman" and Oscar Pineda were named only in the eighth and ninth causes of auction. (Cmplt. ¶¶ 136, 144) Because this Court dismissed those claims in its prior

The Union now moves for summary judgment on the remaining claims in the first and second causes of action, set forth in Paragraphs 49, 53-61, 65-68, 72, 75, and 76 of the Complaint, arguing that these claims are either time-barred or that there is no evidence from which a reasonable factfinder could find that the Union breached its duty of fair representation. (Dkt. No. 50)  The Pritchard Defendants also move for summary judgment as to the claims remaining against them.  (Dkt. No. 44)  For the reasons stated below, Defendants' motions for summary judgment will be granted.

## BACKGROUND

Plaintiff Duljia Biberaj was employed by Pritchard, a commercial cleaning contractor doing business throughout the New York City area, as a full-time office cleaner at 5 Times Square in Manhattan from 2002 through 2009.  (Def. R. 56.1 Stmt. ¶¶ 1-3; Calderone Aff. ¶ 3)[3]  Defendant Local 32BJ, a labor organization under Section 2(5) of the National Labor Relations Act, represented Biberaj as a member of a bargaining unit of employees employed by Pritchard at 5 Times Square. (Def. R. 56.1 Stmt. ¶¶ 4-5)

The terms and conditions of Biberaj's employment were established under successive collective bargaining agreements between Local 32BJ and a multi-employer bargaining association called the Realty Advisory Board on Labor Relations, Inc. ("RAB"), of

---

Order as to the Union Defendants, Bolman and Pineda are dismissed from the case. (Dkt. No. 23 at 25, 28)

[3] Defendants have submitted a joint Rule 56.1. statement.  To the extent that this Court relies on facts drawn from Defendants' Rule 56.1 Statement, it does so because Plaintiff has not disputed those facts.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . .  fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." (citations omitted)).  Plaintiff did not submit a Rule 56.1 statement to this Court.  "A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.  In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met."  T.Y. v. New York City Dept. of Educ., 584 F.3d 412, 418 (2d Cir. 2009)

which Pritchard is a member.  (Id. ¶ 11)  The relevant collective bargaining agreements in this

action are the 2002 Contractors Agreement (effective January 1, 2002 through December 31,

2004), the 2005 Contractors Agreement (effective October 1, 2004 through December 31, 2007),

and the 2008 Contractors Agreement (effective January 1, 2008 through December 31, 2011)

(individually and collectively referred to as "CBA"). (Id. ¶ 12)

   Articles V and VI of the CBA contain a grievance and arbitration procedure

through which Local 32BJ and Pritchard process and adjust grievances under the CBA on behalf

of bargaining unit members.  (Id. ¶ 13)  The grievance procedure under the CBA consists of

three stages:  (1) the Union investigates the employee's complaint and attempts to informally

adjust the complaint with employer representatives; (2) if the dispute is not resolved after the

first step, and the Union believes further action is warranted, the Union may advance the dispute

as a grievance to a Step II Grievance Meeting between Union and employer representatives; and

(3) if the dispute is not resolved at the second step, and the Union believes further action is

necessary, the Union will proceed to an arbitration hearing at the Office of the Contract

Arbitrator ("OCA").  (Id. ¶ 14)

   During her Pritchard employment, Biberaj made numerous complaints to the

Union about Pritchard's treatment of her.  The following allegations survived the Court's ruling

on Defendants' motions to dismiss:

- On December 2, 2004, Biberaj was one of several Pritchard employees who filed a complaint with the Union claiming that Pritchard did not increase their wage rate as required under the CBA from 80% of the minimum rate to 100% after completing an initial 30-month period of employment.  (Id. ¶ 15)  Local 32BJ pursued the grievance through the third step – scheduling the grievance for arbitration at OCA on July 8, 2005.  (Id. ¶ 16)  At the arbitration, Pritchard and the Union entered into a written settlement for back wages.  (Id. ¶ 17)  Payments were not timely made under the settlement agreement, however, and the Union resumed the grievance at an arbitration on October 17, 2006.  (Id. ¶ 18)  At the arbitration, the parties consented to the arbitrator issuing an award requiring Pritchard to pay the employees unpaid wages

still owed.  (Id.)  On November 3, 2006, the Union forwarded to Biberaj a check issued by Pritchard in the amount of $748.04 for back wages due her under the arbitration award.  (Id. ¶ 19)  Biberaj complains that the Union should have obtained more money for her (Biberaj Dep. at 199) but cannot specify how much more in back wages she should have received. (Def. R. 56.1. Stmt. ¶ 20)

- Pritchard requires employees who will be absent to give notice to the main office at least three hours before the employee's starting time.  (Id. ¶ 22)  Pritchard maintained a record of absences and a call-in log at the main office.  (Id.)  On February 24, 2006, Pritchard issued a written warning to Biberaj because she failed to call in on February 23, 2006.  (Id.)  On February 27, 2006, Biberaj filed a complaint with the Union challenging the written warning.  (Id. ¶ 23; Calderone Aff., Exh. A)  After receiving the complaint, a Union Representative, Oscar Pineda, contacted Tom Calderone at Pritchard to discuss and object to the written warning.  (Id. ¶ 24; Pineda Aff., Exh. A)  On March 10, 2006, pursuant to the Union's standard practice concerning written warnings, Local 32BJ sent a letter to Pritchard objecting to the written warning and reserving the right to challenge the merits of the warning.  (Id. ¶ 25).  Local 32BJ did not take further action regarding the dispute.  (Id.)

- On February 23, 2007, Biberaj filed a complaint with Local 32BJ concerning her supervisor's alleged threat and harassment related to her participation in a Union meeting at 5 Times Square.  (Id. ¶ 27; Pineda Aff., Exh. B)  After receiving Biberaj's complaint, Pineda, the union representative, contacted Calderone to object to the alleged threat.  (Id. ¶ 28)  The Union also sent a letter to Pritchard on April 12, 2007, per the Union's policies, objecting to the harassment of Biberaj and demanding that the responsible supervisor cease such conduct.  (Id. ¶ 29; Goldman Aff., Exh. J)  Although there is no provision in the CBA governing supervisor harassment, Calderone discussed the matter with Gregory Morabito, Biberaj's supervisor.  Morabito assured Calderone that the only reprimands addressed to Biberaj involved work-related issues, and that no action had occurred or would be taken against Biberaj for Union-related activity.  (Id. ¶ 30)  Local 32BJ took no further action concerning the dispute.  (Id. ¶ 31)

- On March 21, 2007, Biberaj filed a complaint with Local 32BJ challenging harassment by Morabito.  (Id. ¶ 32)  After receiving Biberaj's complaint, Pineda contacted Calderone to discuss the complaint, and on April 18, 2007, pursuant to the Union's practice, issued a letter to Pritchard objecting to the alleged harassment and demanding that Morabito stop the conduct in question.  (Id. ¶ 33-34; Pineda Aff., Exh. C; Goldman Aff., Exh. K)  The Union took no further action concerning this dispute.  (Id. ¶ 35)

- On March 22, 2007, Biberaj was again issued a written warning concerning her failure to call in to Pritchard to report her absence that day.  (Id. ¶ 36)  On March 26, 2007, Biberaj filed a complaint with Local 32BJ challenging the written warning.  (Id. ¶ 37; Pineda Aff., Exh. D)  After receiving the complaint, Pineda contacted Calderone to discuss the written warning, and on April 16, 2007, the Union issued a letter

5

objecting to the written warning and reserving the right to challenge its merits. (Id. ¶¶ 38-39; Goldman Aff., Exh. L) The Union took no further action concerning the dispute, and Pritchard maintains that there is no evidence that Biberaj complied with its call in policy that day. (Id. ¶¶ 40-41)

- On April 4 and 5, 2007, Biberaj was issued two written warnings. The first concerned her leaving garbage outside a tenant's doorway. The second warning involved a tenant complaint that Biberaj had left garbage in the tenant's reception area three times in the prior two weeks. (Id. ¶ 42) On April 5, 2007, Biberaj filed a complaint with Local 32BJ challenging the written warning issued on April 4, 2007. (Id. ¶ 43) The Union does not have a record of Biberaj filing a complaint challenging the April 5, 2007 written warning. (Id. ¶ 43, n.10; Goldman Aff. ¶ 34) On May 4, 2007, the Union sent a letter to Pritchard objecting to the April 4, 2007 written warning and reserving the right to challenge the merits of the warning. (Id. ¶ 44; Goldman Aff., Exh. M) The Union took no further action, and Pritchard did not believe there was any basis for rescinding either warning. (Id. ¶¶ 45-46)

- On April 26, 2007, Biberaj was suspended for two days after again not calling in to report her absence. (Id. ¶ 47) Pritchard believed that the suspension was warranted given its prior warnings to Biberaj. (Id.) On April 30, 2007, Biberaj filed a complaint with the Union challenging the suspension. (Id. ¶ 48; Pineda Aff., Exh. E) Pineda again contacted Calderone to discuss and object to Biberaj's suspension. (Id. ¶ 49) Local 32BJ advanced the dispute to a Step II grievance meeting at OCA on July 31, 2007. (Id. ¶ 50) At the meeting, the Union offered evidence that Biberaj had at least attempted to contact her supervisor on the day in question. (Id.) Representatives from Pritchard and Local 32BJ then negotiated a written settlement of the grievance that provided for withdrawal of the suspension and reimbursement to Biberaj for two days of lost wages. (Id. ¶ 51) Union representative Frank Booth was present during the meeting and explained the terms of the agreement to Biberaj. (Id. ¶ 53) The terms of the agreement were also translated into Albanian for Biberaj during the meeting. (Id. ¶ 54) The settlement was reduced to writing in English and signed by Pritchard, Local 32BJ, and Biberaj. (Id. ¶ 52) Biberaj received a copy of the settlement agreement, and had her children translate it from English to Albanian the next day. (Id. ¶ 55; Biberaj Dep. at 224) The Union withdrew the grievance and took no further action concerning this dispute. (Id. ¶ 57)

- On September 25, 2007, Biberaj was suspended for two days for failing to vacuum a tenant area on several consecutive nights. (Id. ¶ 58) The tenant had filed a written complaint with Pritchard. (Id.) The next day, Biberaj filed a complaint with Local 32BJ challenging the two-day suspension. (Id. ¶ 59) After receiving Biberaj's complaint, Booth scheduled a meeting on October 3, 2007 with Pritchard and Biberaj, in an attempt to resolve the complaint under Step I of the grievance procedure. (Id. ¶ 60) At the meeting, the Union, Pritchard, and Biberaj agreed to settle the grievance on the following terms: Pritchard would reduce Biberaj's suspension from two days to one day, and Biberaj agreed to improve her job performance. The parties further agreed that this settlement resolved all past and current grievances against Pritchard.

6

(Id. ¶ 61; Goldman Aff., Exh. P)  The settlement was reduced to writing in English, and signed by Pritchard, Local 32BJ, and Biberaj.  (Id. ¶ 52)  Biberaj received a copy of the settlement agreement, and had her children translate it from English to Albanian the next day. (Id. ¶¶ 61, 63)  The Union withdrew the grievance and took no further action concerning this dispute.  (Id. ¶ 65)

- On January 22, 2008, Biberaj field a complaint with Local 32BJ challenging Pritchard's refusal to allow her to work on the Martin Luther King holiday on January 21, 2008.  (Id. ¶ 67)  After receiving the complaint, Booth contacted Calderone at Pritchard to discuss this issue.  (Id. ¶ 68)  Under the CBA, the MLK holiday is designated as an "elective" holiday, which means that if an employee elects it as a holiday, the employee will not be scheduled to work that day but will still be paid for that day.  (Id. ¶ 69)  Biberaj testified that although she was paid for the day as a holiday, she should have been allowed to work that day and receive additional pay. (Id. ¶ 70)  Booth concluded that Biberaj was not eligible to work on the MLK holiday because she had designated it as an elective holiday.  (Id. ¶ 71)  Booth notified Biberaj by telephone that he was withdrawing the complaint because it lacked merit, and the Union took no further action concerning it.  (Id. ¶¶ 72-73)

- On March 13, 2008, Biberaj filed a complaint with Local 32BJ challenging harassment by her supervisor and an excessive workload.  (Id. ¶ 74)  After receiving Biberaj's complaint, Booth contacted Calderone to discuss these issues.  (Id. ¶ 75) On March 20, 2008, pursuant to its standard practice, the Union sent Pritchard a letter objecting to the harassment of Biberaj and demanding that the responsible supervisor cease such conduct.  (Id. ¶ 76; Goldman Aff., Exh. R)  Booth also discussed this complaint with Pineda, who reported to Booth that he had recently held a meeting at 5 Times Square with Calderone to address employee complaints about supervisor Morabito.  Calderone had assured Pineda that he would speak with Morabito about the problem.  (Id. ¶ 77).  The Union took no further action concerning this complaint. (Id. ¶ 78)

- Biberaj alleges that on or about June 12, 2008, she attempted to file a complaint with the Union challenging harassment by her supervisors.  (Id. ¶ 79)  Biberaj claims that an unidentified union representative tore up her complaint and told Biberaj to return to work.  (Id. ¶ 80)  The Union has no record of Biberaj attempting to file a complaint on June 12, 2008.  (Id. ¶ 81)

- On August 22, 2008, Biberaj filed a complaint with the Union challenging Pritchard's assignment of overtime at 5 Times Square.  (Id. ¶ 83)  Pritchard assigns overtime among cleaners on a rotating basis.  (Id. ¶ 84)  Under the CBA (Article XIV, Section 8), Pritchard is required to rotate overtime work evenly among the employees at each work site.  Overtime is not assigned based on seniority.  (Id. ¶ 85)  After receiving Biberaj's complaint, Booth contacted Pineda.  Pineda reported that he had met with Pritchard representative Dean Lanza about the assignment of overtime at 5 Times Square.  Pineda concluded that Pritchard was in compliance with the CBA.  (Id. ¶ 86)

Booth told Biberaj that based on the Union's investigation, he was withdrawing the complaint.  (Id. ¶¶ 87-88)

Biberaj also alleges that Pritchard failed to pay the required minimum wage, failed to timely pay vacation bonuses and for unused sick days, and failed to pay her overtime compensation.  (Cmplt., ¶¶ 111-12, 119-21)

Finally, regarding her intentional infliction of emotional distress claim, Biberaj testified at her deposition that Gregory and Maliot told her "you are shit" and "you are nothing" "many times" (Biberaj Dep. at 84); that Maliot referred to her in front of others "all the time" as "[b]itch, slut, whore" (id. at 168); that Gregory and Maliot once called her a "monkey face" (id. at 84-85); and that Gregory called her an "animal" two or three times.  (Id. at 171)  Biberaj also testified that she remembers calling for an ambulance at work on two occasions, including one time in February 2009 when she felt like she was "suffocating" and "couldn't breathe."  (Id. at 176).  Biberaj also testified that she has seen at least two doctors for depression (id. at 179), that she briefly took medication for depression in February 2009 (but threw those pills away), and that she briefly took medication for depression again in November 2009.  (Id. at183-88)

*     *     *     *

Biberaj filed this action on September 15, 2008.  (Dkt. No. 1)  She was then represented by counsel.  Defendants filed their motions to dismiss on November 12, 2008.  The Court extended Biberaj's time to respond to the motions to dismiss several times.  Biberaj ultimately dismissed her attorney, however, and she did not retain new counsel at that time. (Dkt. Nos. 14, 15, 22)  On September 28, 2009, this Court issued an order granting in part and denying in part Defendants' motions to dismiss.  (Dkt. No. 23)

In January 2010, Biberaj retained new counsel, but on April 2, 2010, this Court granted the attorney's motion to withdraw.  (Dkt. No. 37)  Later in April 2010, Biberaj retained

her third attorney.  On October 22, 2010, Defendants served their motions for summary judgment.  (See Dkt. Nos. 44, 50)  On November 15, 2010, this Court relieved Biberaj's third lawyer and extended Biberaj's time to file her opposition until December 15, 2010.  (Dkt. No. 42)  Biberaj has not responded to the instant motions.

## DISCUSSION

### I.   LEGAL STANDARD

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Whether facts are material is a determination made by looking to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Whether "[a] dispute about a genuine issue exists" depends on whether "the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (internal quotation marks omitted).  Courts "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," as in the instant case, "the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  The non-movant "cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts,'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)), and "may not rely on mere conclusory allegations nor speculation, but instead

9

must offer some hard evidence showing that [her] version of the events is not wholly fanciful."
Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of
New York, 132 F.3d 145, 149 (2d Cir. 1998)).

## II.     HYBRID BREACH OF CBA/DUTY OF FAIR REPRESENTATION CLAIM

The Complaint presents a hybrid breach of CBA/duty of fair representation
("DFR") claim arising under Section 301 of the Labor Management Relations Act, 29 U.S.C. §
185, which governs an employer's obligation to comply with the CBA and the judicially-created
doctrine of the union's duty of fair representation.  See Vaca v. Sipes, 386 U.S. 171 (1967).  In
its September 28, 2009 Order, this Court dismissed Biberaj's Section 301 claim to the extent that
it relied on time-barred conduct set forth in Paragraphs 46-48, 50-52, 62-64, and 73 of the
Complaint.  The remaining Section 301 allegations are contained in Paragraphs 49, 53-61, 65-68,
72, 75, and 76 of the Complaint.

### A.     Allegations Related to July 31, 2007 and
###        October 3, 2007 Settlement Agreements

"The limitations period on [a] 'hybrid § 301/DFR' [claim] is six months, which
begins to run when the employee knew or should have known of the breach of the duty of fair
representation."  White v. White Rose Food, a Div. of Digiorgio Corp., 128 F.3d 110, 114 (2d
Cir. 1997) (quotation marks omitted); see also Ramey v. Dist. 141 Int'l Ass'n of Machinists &
Aerospace Workers, 378 F.3d 269, 278 (2d Cir. 2004) (applying six month statute of limitations
and explaining that "in a suit alleging a breach of the duty of fair representation brought by union
members against their union, 'the cause of action accrue[s] no later than the time when [the
union members] knew or reasonably should have known that . . . a breach ha[s] occurred'")
(quoting Santos v. Dist. Council of New York City, 619 F.2d 963, 969 (2d Cir. 1980)).

In determining whether hybrid claims are timely, courts analyze factual allegations individually.  See, e.g., Blossomgame v. New York's Health & Human Serv. Union, 02 Civ. 1594, 2004 WL 2030285, at *8 (E.D.N.Y. Sept. 10, 2004) (determining that claims brought prior to plaintiff's demotion were barred by the statute of limitations, but finding claims she raised after her demotion were timely); Gorodkin v. Q-Co. Indus., Inc., No. 89 Civ. 8033 (LMM), 1992 WL 122769, at *6-7 (S.D.N.Y. May 27, 1992) (separately analyzing lost earnings, lost benefits, and deprivation of employment claims).

In the September 28, 2009 Order, this Court declined to dismiss allegations related to settlements Biberaj entered into on July 31, 2007, and October 3, 2007, in which she released certain claims against Pritchard and Local 32BJ employees.  (See Dkt. No. 23 at 11-12) This Court found that the statute of limitations began to run when these documents were translated for Biberaj, but the record at the time did not reveal when that occurred.  It is now undisputed that the terms of the July 31, 2007 settlement were translated into Albanian for Biberaj during the July 31 meeting, and that Biberaj received a copy of the settlement agreement, and had her children translate it for her, the following day.  (Def. R. 56.1 Stmt. ¶ 54-55; Biberaj Dep. at 135, 222, 224)  Biberaj also received a copy of the October 3, 2007 settlement agreement and had her children translate it from English to Albanian on October 4, 2007.  (Def. R. 56.1 Stmt. ¶¶ 61, 63; Biberaj Dep. at 230)  As noted above, the October 3, 2007 settlement agreement provided that Pritchard would reduce Biberaj's suspension to one day, and that the agreement resolved "all past and current grievances" against Pritchard through October 3, 2007.  (Biberaj Dep. at 227-28; Goldman Aff. ¶ 42, Exh. O)

Assuming arguendo that there is a material issue of fact as to whether the Union improperly forced Biberaj to sign the July 2007 and October 2007 settlement agreements,

Biberaj was required under the applicable statute of limitations to file any complaint concerning these agreements within six months, or no later than January 31, 2008 and April 4, 2008, respectively.  Biberaj did not file this action until September 15, 2008.  Accordingly, the allegations set forth in Paragraphs ¶¶ 58-61 and 65-68 of the Complaint are time-barred.  See Wells v. Mount Vernon Hospital, 01-cv-9129(RCC), 2002 U.S. Dist. LEXIS 12831 (S.D.N.Y. July 15, 2001) (dismissing Plaintiff's breach of duty of fair representation claim on statute of limitations grounds, even if settlement signed was the product of a breach of the duty of fair representation).[4]

### B.   Biberaj's Remaining Hybrid Claims Fail on the Merits

"To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members."  White v. White Rose Food, a Div. of DiGiorgio Corp., 237 F.3d 174, 178 (2d Cir. 2001).  In order to establish the second prong, Plaintiff must show that:  (1) a union's "conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith"; and (2) there was "a causal connection between the union's wrongful conduct and [plaintiff's] injuries."  Id. at 179.

"[A] union's actions breach the duty of fair representation 'only if the union's conduct can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary.'"  Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45 (1998).

---

[4]  The Union argues that because the October 2007 settlement agreement released all prior claims, and because Biberaj's claim regarding the October 2007 settlement agreement is time-barred, all claims prior to October 2007 are time-barred.  Courts analyze factual allegations individually when determining whether hybrid claims are timely, however.  Accordingly, this Court will go on to consider the merits of the allegations set forth in Paragraphs 49 and 53-57 of the Complaint.

"This wide range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgment are ultimately wrong." White, 237 F.3d at 179.

<strong>1.</strong>   <strong><u>Failure to Pay Required Raises</u></strong>

On December 2, 2004, Biberaj was one of several Pritchard employees who filed a complaint with the Union claiming that Pritchard had not increased their wage rate as required under the CBA from 80% of the minimum rate to 100% after completing an initial 30 month period of employment.  (Def. R. 56.1 Stmt. ¶ 15)

At the second arbitration regarding this grievance – following Pritchard's alleged failure to honor a prior settlement agreement – the arbitrator entered a consent award requiring Pritchard to pay a group of employees, including Biberaj, wages owed.  (Def. R. 56.1 Stmt. ¶ 18) On November 3, 2006, the Union forwarded to Biberaj a check issued by Pritchard in the gross amount of $1,010.27 (or $748.04 net) for back wages she was to receive under the consent award.  (Id. ¶ 19)  At her deposition, Biberaj testified that she believes that the Union should have obtained more money for her under the grievance, because two other Pritchard employees received a greater recovery than her.  (Biberaj Dep. at 199; see also Cmplt. ¶ 49)

Union records indicate that the back-pay awards received by the eleven Pritchard employees involved in this grievance ranged from $1,040.00 to $683.43 gross.  (Goldman Aff. ¶ 19, Exh. G)  The difference in the amounts was due to the different number of hours worked by each grievant during the time period covered by the consent award.  (Goldman Aff. ¶ 19)  Based on the record before it, this Court cannot find that the Union acted in bad faith or in an arbitrary manner when it obtained a settlement for Biberaj that was tied to the number of hours she had worked.  Accordingly, this Court finds that the Union did not breach its duty of fair representation in connection with the December 2, 2004 grievance.

13

2.      **Written Warnings**

This Court held in its September 28, 2009 Order that Biberaj could proceed with her hybrid claim to the extent it is based on grievances filed on February 24, 2006, February 23, 2007, March 21, 2007, March 22, 2007, and April 4, 2007.  All of these grievances relate to written warnings Pritchard had issued to Biberaj.  In each instance, Local 32BJ sent a complaint letter to Pritchard about the grievance pursuant to Union policy.[5]  (Dkt. No. 23 at 9 n. 5; Cmplt., ¶¶ 53-57)  Defendants argue that the Union followed its standard procedure in filing a written objection to each warning, and that the policy of issuing such letters "can hardly be considered arbitrary."  Weeks v. Local 1199, 892 F.Supp. 568, 572 (S.D.N.Y. 1995).

"It is well-established that a union member does not have an absolute right to have a grievance taken to arbitration."  Carrion v. Local 32B-32J SEIU, 03-cv-1896(THK), 2005 U.S. Dist. Lexis 4417, at *21 (S.D.N.Y. March 21, 2005)  "[A]bsent a showing of arbitrary conduct or bad faith, a court should not second guess the union's decision not to pursue [the employee's] grievance."  Lapir v. Maimonides Medical Ctr., 750 F.Supp. 1171, 1179 (E.D.N.Y. 1990) (citing Cook v. Pan American World Airways, Inc., 771 F.2d 635, 645 (2d Cir. 1985).

The Union states that it does not pursue members' grievances based on harassment or employer discipline involving less than a suspension or discharge because of the high volume of such complaints.  (Goldman Aff. ¶ 14)  Moreover, harassment complaints typically do not allege violations of the CBA.  Accordingly, the Union's policy – followed here – is to merely send letters to the employer objecting to the harassment or warning.  (Id.)  These

---

[5]  Plaintiff alleges in Paragraph 57 of the Complaint that she received two warnings – one on April 4, 2007 and one on April 5, 2007 – and that her grievance to the Union concerned both warnings.  The Union says it does not have a record of ever receiving a complaint concerning the April 5, 2007 warning.  (Def. R. 56.1 Stmt. ¶ 43, n.10; Goldman Aff. ¶ 34)  The Court deems this fact admitted given Plaintiff's failure to submit a Rule 56.1 statement.

letters demand that the employer cease the harassment at issue and, in the case of a verbal or written warning, object to the warning and reserve the union's right to arbitrate the merits of the warning.  (Id.)

The Court cannot find Local 32BJ's policy arbitrary or in bad faith.  The CBA contains no provisions addressing "harassment"; accordingly, the Union did not ignore violations of the CBA.  Moreover, the Union's policy of pursuing to grievance only serious employer discipline is rational, given the overwhelming number of complaints it receives.  See Messina v. 1199 SEIU United Healthcare Workers East, 2011 WL 5120352, at * 2 (2d Cir. 2011) (where union had several hundred-thousand members and could not arbitrate every dispute, its actions were not arbitrary).  Accordingly, Defendants will be granted summary judgment on Plaintiff's hybrid claim to the extent it is based on Paragraphs 53-57 of the Complaint.

### 3.     Holiday Pay, Excessive Workload Claim, Overtime Allegation

Biberaj objects to the Union's handling of her (1) January 2008 complaint concerning Pritchard's refusal to call her into work on the Martin Luther King holiday; (2) March 2008 complaint about harassment and excessive workload; and (3) August 2008 complaint about Pritchard's assignment of overtime work.  (Cmplt. ¶¶ 72, 75, 76)  It is undisputed that Local 32BJ investigated all of these complaints and concluded that they did not justify further action.

"[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance."  Carrion, 2005 U.S. Dist. Lexis 4417 at *20 (citing Cruz v. Local Union No. 3 of the IBEW, 34 F.3d 1148, 1153-54 (2d Cir. 1994)).  "[A]n inference of negligence . . . is insufficient to show a breach of the Union's duty of fair

representation." McNair v. New York City Health & Hosp. Co., 160 F. Supp. 2d 601, 605 (S.D.N.Y. 2001).

During his investigation of the Martin Luther King holiday complaint, Booth determined that Biberaj was not eligible to work on that day because she had designated it as an elective holiday; she received a day off and holiday pay but was not entitled to work and receive additional pay on top of her holiday pay.  (Def. R. 56.1 Stmt. ¶ 71; Booth Dep. at 71)  As to the overtime issue, Pineda concluded that Pritchard was making overtime assignments in compliance with the CBA.  (Id. ¶ 86; Booth Dep. at 80-81)  Biberaj has offered no argument or evidence that the Union's actions in connection with these matters were arbitrary or in bad faith.  See Pozo v. J & J Hotel Co., L.L.C., 06 Civ. 2004 (RCC)(AJP), 2007 U.S. Dist. LEXIS 34143, at *38-40 (S.D.N.Y. May 10, 2007) (union's actions not arbitrary, discriminatory, or in bad faith where plaintiff did not present any evidence that refuted union's explanation as to why plaintiff was not eligible to raise a certain claim under the CBA); Beckman v. United States Postal Serv., 79 F. Supp. 2d 394, 402 (S.D.N.Y. 2000) (union did not breach duty of fair representation where it had ample reason to withdraw plaintiff's grievance under the express terms of the CBA).  Even if there were errors in the respective investigations, and a violation of the CBA was not pursued through the grievance procedure, such an error would not rise to the level of arbitrary or bad faith conduct, and would be merely negligent.

As to the March 2008 harassment and excessive workload complaint, as discussed above, the CBA does not address harassment.  Nevertheless, on March 20, 2008, pursuant to the Union's standard practice, the Union sent Pritchard a letter objecting to the harassment of Biberaj and demanding that the responsible supervisor cease such conduct.  (Id. ¶ 76; Goldman Aff. 48, Exh. R)  Union representative Booth also contacted Calderone at Pritchard to discuss the

issue.  (Def. R. 56.1 Stmt. ¶ 75)  Booth also discussed Biberaj's complaint with Pineda, who

reported to Booth that he had recently held a meeting at 5 Times Square with Calderone to

address employee complaints about the responsible supervisor, Gregory Morabito, and that

Calderone had assured Pineda that he would speak with Morabito about the problem.  (Id. ¶ 77).

With respect to the excessive workload claim, from his investigation, Booth concluded that the

additional lobby sweeping assigned to Biberaj was not prohibited by the CBA.  (Booth Dep. at

75, 88)  Based on this record, this Court cannot find that Local 32BJ breached its duty of fair

representation in connection with this incident.

Defendants will be granted summary judgment on the claims set forth in

Paragraphs 72, 75, and 76 of the Complaint.

### 4.       **Alleged Refusal to Accept June 12, 2008 Complaint**

Biberaj's final allegation related to her hybrid breach of CBA/duty of fair

representation claim involves her assertion that on June 12, 2008, an unidentified Union

representative refused to accept her complaint alleging harassment by her supervisors.  (Def. R.

56.1 ¶ 79)  Biberaj claims that the Union representative ripped up her grievance "and told her to

go to work before [she lost her] job."  (Cmplt., ¶¶ 60, 66, 76).  The Union has no record that

Biberaj attempted to file a complaint on or about June 12, 2008 (Def. R. 56.1 Stmt. ¶ 81) and

there does not appear to be any evidence corroborating the Complaint's allegations.  Biberaj has

likewise not demonstrated that she suffered any injury as a result of the Union representative's

alleged conduct.  Defendants will be granted summary judgment on this claim.

### III.     **FLSA AND NEW YORK LABOR LAW CLAIMS**

Biberaj's remaining claims under the FLSA and NYLL concern allegations that

the Pritchard Defendants failed to pay her the applicable minimum wage, failed to make timely

wage payments to her, and failed to pay overtime compensation to her.  (Cmplt. ¶¶ 111-13, 119-21)

### A.    **Failure to Pay Minimum Wage**

The current federal and New York state minimum wage is $7.25 per hour.  (Def. R. 56.1 Stmt. ¶ 90)  Biberaj acknowledged at her deposition that when she started work at Pritchard in 2002 she earned $13.00 per hour, and that her wages increased regularly, reaching $21.00 per hour at the time of her departure.  (Biberaj Dep. at 73-75)  There is thus no evidence that Pritchard has ever violated minimum wage laws.

### B.    **Failure to Pay Timely Wages**

In its September 28, 2009 Order, this Court found that "[w]hile the Complaint does not allege specific hourly wages that were paid in an untimely fashion, it does set forth claims for unpaid sick days and vacation pay, and directs the Defendants to specific grievances that raised such claims."  (Dkt. No. 23 at 19 (citing Cmplt. ¶¶ 48, 50)).  The Pritchard Defendants argue – and this Court agrees – that federal and state laws do not dictate the timing of these payments.  Instead, such payment must be paid in accordance with the agreement or practice of the parties.  (Pritchard Br. at 20; see Glenville Gage Co., Inc. v. Industrial Bd. of Appeals, 70 A.D. 2d 283, aff'd, 52 N.Y. 2d 777 (1979).

Pritchard contends that its practice is to pay unused sick pay by the end of February of the year following the calendar year in which the sick pay was earned, in accordance with the CBA; Biberaj only had unused sick days in 2005, and was paid for them.  (Def. R. 56.1 Stmt. ¶ 91)  Pritchard also maintains that vacation bonuses (7 ½ hours pay or two extra days of vacation) were paid to cleaners if their section was covered during the vacation period by cleaners who spent less time cleaning the section than the regularly assigned cleaner.  (Id.)  In

years when Biberaj met these requirements, she was paid the vacation bonus.  Indeed, Biberaj

acknowledged at her deposition that she had received vacation bonuses in the past.  (Id.; Biberaj

Dep. at 161)  The CBA does not specify when the vacation bonus is to be paid.  (Id.)  Under

these circumstances, the record does not demonstrate that a violation of the FLSA or NYLL has

taken place.

###	C.	Failure to Pay Overtime

Both the FLSA and the NYLL require that employers pay their employees time-

and-a-half after the employee has worked more than 40 hours during a work week.  29 U.S.C. §

207(a)(1); N.Y. Labor Law §§ 650 et seq.  Pritchard maintains that it has always paid overtime

for hours worked over 40 at the rate of time and one half.  (Calderone Aff. ¶ 19)

In her Complaint, Biberaj alleges that Pritchard failed to pay her overtime.

(Cmplt. ¶ 93)  At her deposition, Biberaj testified that on weekdays she worked a 40-hour week

(from 5:30 p.m. to 1:25 a.m. each day), and that when she was called in on the weekends, she

was paid time and one half.  (Biberaj Dep. at 42, 78-79)  Biberaj explained that her claim for

overtime related to when she had to cover the floor of a sick co-worker.  According to Pritchard,

however, under the CBA, when an employee covers for an absent employee within their 8 hour

shift, the covering employee receives extra pay; Biberaj received such pay.  (CBA, Article XIV,

Section 6; Calderone Aff. ¶ 19)

There is no evidence that Pritchard has violated the overtime provisions of the

FLSA and NYLL.  Accordingly, the Pritchard Defendants will be granted summary judgment on

these allegations.

IV.     **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

In its September 28, 2009 Order, this Court found that Biberaj's intentional infliction of emotional distress claim survived a motion to dismiss under the continuing tort doctrine.  See Lucas v. Novogratz, No. 01 Civ. 5445 (GEL), 2002 WL 31844913, at *7 (S.D.N.Y. Dec. 18, 2002) ("Although the New York case law is not unanimous on the subject, courts in this District have held that 'claims for IIED that allege a continuing pattern and practice of actionable behavior may invoke the continuing tort doctrine to provide an exemption from the statute of limitations.'") (quoting Neufeld v. Neufeld, 910 F. Supp. 977, 983 (S.D.N.Y. 1996)). To prevail on this claim, however, Biberaj must demonstrate that "the conduct that falls within the limitations period [is] in and of itself actionable conduct and not merely the effect of prior tortious conduct." Id.; Cabrera v. NYC, 436 F. Supp. 2d 635, 646 (S.D.N.Y. 2006) ("for the statute of limitations to be tolled under the theory of continuing wrongs, the acts within the statute of limitations must be sufficient to make out a claim for intentional infliction of emotional distress. . . .") (quotation omitted).

"To make out a claim for intentional infliction of emotional distress under New York law, a plaintiff must plead:  (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Lee v. Sony BMG Music Entm't, Inc., 557 F. Supp. 2d 418, 426 (S.D.N.Y. 2008) (quotation omitted).

"New York sets a particularly high bar for conduct that is so 'extreme and outrageous' that it is actionable under this tort." Sharabura v. Taylor, No. 03 Civ. 1866(JG), 2003 WL 22170601, at *4 (E.D.N.Y. Sept. 16, 2003) (citation omitted).  Biberaj "must plead and prove conduct which is so extreme and outrageous that it 'transcends the bounds of decency as to

20

be regarded as atrocious and intolerable in a civilized society,'" Pawlicki v. City of Ithaca, 993 F.Supp. 140, 145-46 (N.D.N.Y.1998) (citing Shapiro v. County of Nassau, 202 A.D.2d 358 (1st Dept 1994)), and must also present medical evidence in support of her claim.  Singh v. U.S. Security Associates, 03 Civ. 2059(FM),  2005 WL 236511, at *14 (S.D.N.Y. Feb. 5, 2005) (citing Bujnicki v. American Paving and Excavating, Inc., No. 99 CV 646S, 2004 WL 1071674, at * 14 (W.D.N.Y. Mar 30, 2004)); Pepe v. Maklansky, 67 F.Supp.2d 186, 187 n. 1 (S.D.N.Y.1999); Walentas v. Johnes, 257 A.D.2d 352, 353 (1st Dep't 1999) ("[T]o prevail on this state law claim, [the plaintiff] would also have to establish through medical evidence that he suffered severe emotional distress.").  Courts routinely grant summary judgment against plaintiffs where they have failed to present medical evidence demonstrating severe emotional injury.  See Pierre-Antoine v. City of New York, 04 Civ. 6987(GEL), 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006); Christenson v. Gutman, 249 A.D.2d 805 (3rd Dep't 1998) (citing Glendora v. Walsh, 227 A.D.2d 377, 377-378 (2d Dep't 1996); Erani v. Flax, 193 A.D.2d 777, 598 N.Y.S.2d 268 (2nd Dep't 1993)) ("[P]laintiffs' failure to submit medical evidence or the need to seek medical attention resulted in conclusory or speculative allegations that were properly dismissed on summary judgment[.]").

        While the Pritchard Defendants mischaracterize Biberaj's deposition testimony concerning the alleged harassment she experienced, Biberaj does not present evidence of sufficiently outrageous and extreme conduct to support a claim for emotional distress.  While she testified that her supervisors and co-workers called her names and insulted her "many times," her testimony is unclear about how often she was subjected to verbal harassment.  (See Biberaj Dep. at 84, 170)  Furthermore, the alleged harassment does not appear to rise to the level of "atrocious and intolerable in a civilized society."  "New York courts appear to require that plaintiffs allege

either an unrelenting campaign of day in, day out harassment or that the harassment was accompanied by physical threats, in order to state a cognizable claim for intentional infliction of emotional distress." Nunez v. A-T Financial Information Inc., 957 F.Supp. 438, 442 (S.D.N.Y.1997). There is no such evidence here.

Biberaj also does not present sufficient medical evidence to support her claim. Although she recalls leaving work in an ambulance on two occasions, it is not clear what caused her to feel ill. While it appears that she was prescribed medication for depression, she threw the pills away. (Biberaj Dep. at 183-88) After this action was filed, she resumed taking medication, but only for a month or so. In sum, the medical evidence proffered by Biberaj is not sufficient to make out a claim for intentional infliction of emotional distress. The Pritchard Defendants are entitled to summary judgment on this claim.

## CONCLUSION

Defendants' motions for summary judgment are GRANTED. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 44, 50) and to close this case.

Dated: New York, New York
       March 12, 2012

SO ORDERED.

Paul G. Gardephe
United States District Judge

22

**Copy to:**
**Duljia Biberaj**
32-35 Grand Concourse
Apt. 4E
Bronx, NY 10468